MUNICIPAL SIGNAL CO. v. NATIONAL ELECTRICAL MFG. CO.

(Circuit Court of Appeals, Second Circuit. February 7, 1901.)

No. 20.

PATENTS—VALIDITY AND INFRINGEMENT—MUNICIPAL SIGNALING SYSTEM.

The Noyes patents, No. 359,687, for a municipal or police signal system, and No. 359,688, for a transmitting apparatus for such a system, were not anticipated by patent No. 359,686, to the same inventor, and relating to the same subject-matter, nor by anything in the prior art, and are valid. Claims 1 and 2 of the first patent also *held* infringed, and the second, as limited by the first, *held* not infringed.

Appeal from the Circuit Court of the United States for the District of Connecticut.

For former opinions, see 97 Fed. 810, 99 Fed. 569.

This is an appeal from an interlocutory decree of the circuit court, district of Connecticut, finding infringement by defendant of two patents owned by complainant. Both were issued on the same day, March 22, 1887, to Bernice J. Noyes, assignor to the Municipal Signal Company of New Hampshire, the predecessor of complainant, which is a Maine corporation. The patents are No. 359,687, with eleven claims, of which the first two only were held to be infringed, and No. 359,688, with five claims, all of which were held to be infringed. The first claim of No. 359,687 (hereinafter called '87) and the five claims of No. 359,688 (hereinafter called '88) were sustained in the First circuit by Judge Colt at circuit (Municipal Signal Co. v. Gamewell Fire-Alarm Tel. Co. [C. C.] 52 Fed. 464), and by the circuit court of appeals (10 C. C. A. 184, 61 Fed. 948), Judge Putnam dissenting as to No. '88.

Arthur v. Briesen, for appellant.

S. O. Edmonds, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The opinions in the First circuit are full and careful discussions of the patents and the art as there disclosed. So far as this court is in accord with argument or conclusion, it will be sufficient to indicate that fact, without rehearing the same. Thus this opinion may be materially abbreviated, and its discussions confined to matters not before the courts in the First circuit. A somewhat full quotation from No. '87 will best describe the invention, which has for its object a municipal or police signal system:

"A series of signal boxes or substations are connected by an electric circuit with a main station. Each signal box or substation contains a multiple-signaling device for sending signals of different character or significance, and the main station is provided with suitable means for receiving the said signals, and also with suitable means for audibly warning the attendant when signals of one or another character or class are being received. The multiple-signaling device located at the substations consists of a break wheel comprising a disk, a segment or portion of which is insulated from the remaining portion. The periphery of the disk is provided with several groups of signals, so that when brought into co-operation with a contact pen one or another signal is transmitted. The main portion of the disk, or 'break wheel,' as it may be termed, is connected with the main circuit, and the contact pen normally bears upon the periphery of this portion of the disk, said contact pen being also connected with the main circuit. The disk is mounted upon a shaft under the control of the operator. Suitable means are provided for locking the contact pen out of contact as the disk is revolved in one direction and for

releasing said pen to make contact as the disk assumes its normal position, said means being such as shown and described in another application filed by me concurrently with this. It is herein designed that the main portion of the disk shall transmit the special or want signals by total interruptions of the current. The disk is also so constructed and arranged to be revolved in an opposite direction that the contact pen may make contact with the insulated segment, which is provided with a signaling surface corresponding with the number of the box indicative of its locality, and similar means are employed for disengaging and restoring the contact pen, as previously described. Suitable auxiliary pens are employed, normally in contact with the said segmental portion, which, when brought into co-operation with the revolving disk, interposes a suitable resistance into the line, that the current may be reduced in strength at intervals. Suitable keys are employed for revolving the disk in opposite directions, said keys being so shaped that they can only be employed for the purposes intended.

"It is herein designed that a policeman shall send in his 'on duty' signal by reduction in the current strength, and in this instance, the segmental portion of the disk being employed, only the box number is transmitted. It is also designed that certain authorized citizens shall have access to the boxes when in need of assistance to transmit a signal, such signal in this instance being transmitted upon the main portion of the disk, the keys carried by the citizens being suitably shaped to transmit only the box number, while the key carried by the policeman is so shaped that he can transmit upon the main portion of the disk or multiple-signaling device any desired signal.

"At the main station a relay is interposed in the main line, which responds to both reductions in the current strength, and also to total interruptions thereof, said relay controlling a local circuit, in which any suitable recorder or register is connected, to thus record all signals transmitted by the multiple-signaling device, whether patrol or special signals. Another relay is also connected with the main line, which is adjusted to respond to only total interruptions in the current; said relay, by means of an annunciator drop, controlling a local circuit in which a vibrating or other suitable bell or gong is located, so that when any special signal, or one demanding immediate attention, is received, which in this instance is transmitted by total interruptions in the current, an audible warning is given to the attendant of such fact, calling his attention to the recorder or register, which otherwise he might not do, as the patrol signals are received."

Details of the structures need not be set forth except this:

"A relay, R¹, is included in the main-line circuit, L, which will respond to either a total break or to a reduction in the current, it having a stronger retractor. The armature of the relay R¹ controls a local circuit, L², in which is placed a receiving instrument; such, for instance, as an ordinary recorder or registering apparatus, R². A relay, R³, is also included in the main-line circuit, L, which is adjusted to only respond to total breaks in the line, and not to a reduction in the current strength; the armature lever of the said relay R³, when released, in turn releasing an annunciator, which closes the local circuit L³, thereby causing a vibrating bell, V, located therein, to continuously vibrate until the drop, r, is positively returned to its normal position. It will be seen that as any special or want signal is transmitted over the main portion, a, of the break wheel the current is rapidly broken, releasing the annunciator drop, r, and also causing the relay R¹ to respond; the operation of the co-operating contact pen c having been previously described. When the patrolman desires to transmit his patrol signal, the break wheel is revolved in the direction of the arrow, 6, thereon until the contact pen c is out of contact, but not breaking the circuit; and when he releases his hold upon the key the break wheel will return to its normal position, and during such movement there will be two circuits from the point 21 to the point 22, over which the current alternately travels,—one over the branch wire 13, contact pen c, contact pen g, and wire 14, including a resistance; and the other over wire 13, contact pen c, contact pen h, and branch wire 15, so that the current is alternately reduced in strength and restored to its normal condition; the relay R¹ only responding as previously described. It is ob-

vious that the multiple-signaling device herein described may be employed for transmitting any other class of signals besides that such as herein referred to, and also, if desired, the same may be employed to operate two independent receiving instruments at a central station. I do not desire to limit myself to the means herein shown for interposing the resistance into the main line, as it is obvious that other means may be devised to co-operate with the signal-transmitting apparatus to vary the strength of the current. I claim:

"(1) A system for transmitting signals from a substation to a central station over a main circuit, wherein are combined a multiple-signal transmitter, which is located at the substation, and constructed and arranged to transmit several different signals by current changes of one or another character; a message-receiving instrument at the central station, which receives the signal transmitted; and an audible alarm, also located at the said central station, which responds to the current change of one character only, whereby an audible warning may be sounded for some, and not for other, signals, substantially as described.

"(2) A system for transmitting signals from a substation to a central station, wherein are combined a signal-transmitting apparatus, which is located at the substation, and is constructed and arranged to change the condition of the circuit to transmit different signals; a message-receiving instrument located at the central station, which receives the different signals transmitted; and an audible alarm or indicating signal, also located at the central station, adapted to respond, and thus notify the attendant when some of the messages await reply, but not others,—substantially as described."

Other claims cover the multiple-signaling device, which, as the specification says, may be employed to operate two independent receiving instruments at the central station. They also cover other details of structure, and the use of a resistance as the means for effecting "current changes," or changing "the condition of the circuit." It is quite apparent that a current or circuit may be in a condition of normal flow, or of reduced flow, or of total interruption, and one or other of these conditions may continue for a greater or less length of time.

The courts in the First circuit had before them patents to Stover, Field, and Wilson. Considering the state of the art as thus presented, they found it to be the essence of the Noyes invention that every message of a certain kind must be accompanied by an alarm, while every message of a different kind shall never be accompanied by an alarm; that he accomplished this by the use of a single main circuit, over which all messages pass to a single register or recorder, and while passing there have inherent in themselves a power of self-selection, which, upon arrival, will invariably cause messages of the one kind to sound an alarm and of the other kind invariably not to do so; that such power of self-selection came from current changes in the circuit over which all messages went; and that Noyes was the first inventor of such a system. Wherefore they sustained the first claim broadly for such a system of selective signaling produced by current changes of any character in the main circuit. We concur in their reasoning and conclusion, and it is only necessary to inquire whether the new evidence in the case should lead to a different conclusion. The Henry patent, and the Siemens-Halske publication are briefly treated in argument, and it is enough to say we concur with the circuit court that "they do not, either singly or taken together, sufficiently disclose the principles of the Noyes selective-

signaling system, or a system of practical use for municipal signaling." The main reliance of appellant seems to be on another patent of Noyes. This is No. 359,686 (hereinafter referred to as '86), issued on the same day as the other patents. The specification reads:

"In accordance with this invention, the multiple-signaling device is employed at the substation, which may be operated to transmit several different signals which are divided into two classes, signifying their importance; and a message-receiving instrument is employed at the central station to receive the signals transmitted by the multiple-signaling device; and an audible alarm is also employed at the central station, which gives notice to the attendant when a message of one class—in this instance the important class—is being received or awaits a reply. * * * At the central station a relay is included in the main-line circuit, the armature lever of which controls a local circuit, in which a message-receiving instrument, herein shown as an ordinary recorder or register, is located, the said relay responding to total interruptions of the main line caused by the multiple-signaling device. An audible alarm, herein shown as a vibrating bell, is connected in a ground circuit connected with the main line, and each substation is provided with means for closing the ground branch or terminal, to thereby cause the said vibrating bell to respond while the ground circuit is closed; the relay controlling the local circuit not being effected by the ground circuit. In another application filed by me May 5, 1886, serial No. 201.134 [which became patent '87], devices are shown for operating the multiple-signaling device as are herein shown; and a receiving instrument for recording the messages, as well as an audible alarm, was also shown, but operated by a current of different character. It is herein designed, as in the application referred to, that the patrolman shall transmit his patrol or 'on duty' signal, and also shall be able to transmit any special or want signal necessary; and that certain authorized citizens shall have access to the box or substation to transmit a signal when in need of assistance. The receiving instrument at the central station is arranged to respond to all signals, whether patrol, special, or a citizen's signal; but the audible alarm is arranged to be responsive to only the special or citizen's signal; the two last-named signals being of special importance, and demanding immediate attention, while the former need little attention. * * * At the central station a relay, R, is interposed into the main line, L, having the battery, B, the armature lever, r, of which controls a local circuit, $L^1$, which latter includes a recorder or register, $R^1$, which will respond to interruptions in the main circuit; and, as described, all signals transmitted, whether patrol, special, or citizen. cause a total interruption in the current, and are therefore duly recorded upon the receiving instrument, $R^1$. It is desirable, when any special or citizen's signal is transmitted, that an audible alarm be sounded to indicate the fact, calling the attention of any person at the station. To do this, a ground branch or circuit, $L^3$, is connected with the main line, L, having the battery, $B^1$, and the vibrating bell, V, while at the substation a contact pen or point, o, is connected with a ground terminal normally adjacent to but disengaged from the arm $f^2$. which latter is made of conducting material, so that, as the said arm $f^2$ is moved in one direction (and in this instance in that direction to set up any special or citizen's signal), it will make contact with the said pen or point, o, closing the ground circuit, and causing the bell, V, to respond during the time that the signal is being set up. The pen c at such time, being elevated and retained by the spring latches, f, $f^1$, causes the arm $a^6$ to engage with the cylinder, A, thus keeping the main circuit closed while the ground circuit is closed. The contact pen o, and arm $f^2$, and the co-operating devices constitute a circuit controller to change the condition of a current of different character from that employed by the multiple transmitter for transmitting the signals. The contact pen o is placed in such proximity to the arm $f^2$ that upon any movement of said arm sufficient to set up a special signal the said contact pen will be struck, it yielding to compensate for the various signals upon the cylinder, A. * * * Any other suitable transmitter may be employed at the substation to transmit the various signals than that herein described, the single message receiving apparatus at the central office receiving the same, while

the audible alarm responds to such as have hereinbefore been termed the 'important signals.' I claim:

"(1) In a system for transmitting signals from a substation to a main station, a multiple-signaling device located at the substation for producing changes in the main circuit to transmit a message, and a circuit-controlling device, also located at the substation, and operated mechanically by the multiple-signaling device at the will of the operator for producing changes in another circuit, to transmit a warning signal; a message-receiving instrument, located at the main station, to receive the message transmitted over the main circuit by the multiple-signaling device; and an audible alarm, also located at the main station, responsive to the change in the current produced by the circuit-controlling device at the substation,—all substantially as described.

"(2) In an electric circuit, the combination, substantially as described, of the multiple-signaling device located at the substation for transmitting several different signals; a circuit-controlling device, also located at the substation, for changing the condition of a current of different character from that employed to transmit the signals; a message-receiving instrument at the central station, responsive to all signals transmitted by the multiple transmitter; and an audible alarm, also at the central station, responsive only to the circuit-controlling device at the substation." [Other claims need not be recited.]

It is contended by the appellant that this patent '86, which is first in number of the three, is the fundamental or generic patent, the other two being for special details; and that, as it is not counted on in this suit, it must be treated as outstanding against the other two, leaving them devoid of invention, or reduced to mere details. No. '86 does, it is true, deal with the same field of invention,— selective signaling,—and accomplishes the same result; but there is between this and the other two so wide a difference that it cannot contain them, nor does it overlap them. The extremely vague and obscure phrase, "change the condition of a current of different character from that employed by the multiple transmitter for transmitting the signals," becomes intelligible when the whole document is considered, the "current of different character" being the "current that flows through the ground circuit and the terminals that lead to and from it." In No. '87 all the impulses come over the one circuit to record their messages on the one register, and, by reason of their differing character, impressed with the capacity for self-selection by appropriate receivers at the place of receipt, so that some of them when there received will sound the alarm, and others not. In No. '86 the selection is made at the place of transmission, not at the place of receipt, and the impulse which is to sound the alarm is a different one from the impulse which is to deliver the message, and is itself transmitted by another and different circuit. We concur, therefore, with the court below in the conclusion that the first two claims of No. '87 cover a system such as is set forth in its description, when the self-selection is effected at the place of receipt by current changes of one or another character (normal, reduced, or interrupted for a greater or less period), produced by the operation of a circuit controller at the place of transmission. Patent '88 is an improvement upon '87. It secures selective signaling by "current changes," by a "changed condition of the circuit" of a particular variety. The transmitting apparatus is constructed to produce a series of short changes and a prolonged change in the

current, thus limiting the invention of patent '88 to the particular way of producing changes in the current, or rather to the contrivances which secure such a way of producing changes, for the use of short and long changes, however combined, is already within the first two claims of '87, and cannot by itself be made the subject of claim in '88. The claims of patent '88 are:

"(1) In a system for transmitting signals from one station to another, a transmitting apparatus constructed and arranged to produce a series of short changes in the condition of the circuit and a prolonged change; also a series of short changes, as described; a relay responsive to such changes in the circuit, and a receiving instrument controlled by said relay; another relay, also responsive to such changes in the circuit, and means controlled by the last-named relay, for effecting the operation of an audible alarm or warning signal only upon the occurrence of the prolonged change,—substantially as described.

"(2) In a system for transmitting signals from one station to another, a transmitting apparatus constructed and arranged to transmit a series of total interruptions and a prolonged interruption, and also a series of total interruptions, as described; a relay responsive to such interruptions of the circuit, and a receiving instrument controlled by said relay; another relay, also responsive to such interruptions of the circuit; and means controlled by the armature of the last-named relay for closing a local circuit containing an audible alarm or warning signal only upon the occurrence of the prolonged interruption,—substantially as described.

"(3) In an electric circuit, a transmitting apparatus constructed and arranged to produce a series of changes of short duration in the condition of the circuit, also a series of short changes and a prolonged change combined with a receiving instrument responsive to such changes in the circuit, and an audible alarm responsive to the prolonged change only,—substantially as described.

"(4) In an electric circuit connecting two stations, circuit-controlling devices at the transmitting station for changing the condition of the current to produce impulses of the same character of short and long duration at will, combined with two receivers located at the receiving station, one of which responds to the impulses of short duration, and the other responds to the impulses of long duration only,—substantially as described.

"(5) In a municipal telegraph system, an electric circuit connecting a main and one or more substations, and a signal transmitter at each substation containing circuit-controlling devices which change the condition of the circuit for intervals of short and long duration at will, combined with a message-recording instrument at the main station, which receives the signals transmitted, and an audible alarm, also located at the main station, responsive only to the long changes produced by the circuit-controlling devices at the substations, whereby a warning signal may be sounded for some, and not for other, signals, at the will of the operator, as set forth."

The question of infringement has been argued at great length. The circuit court found the proof of infringement indefinite, but sufficient to establish a prima facie case, and put the defendant upon its denial. It introduced no evidence to disprove the facts testified to by complainant's witnesses as to the construction of the claimed infringing devices. Defendant's circulars, which referred to the Bridgeport and Cleveland plants, installed before the present complainant took title; were a sufficient threat that similar ones would be hereafter erected. A careful inspection of the proof leads us to concur with the judge who heard the cause at circuit as to infringement of patent '87. The testimony indicated that the elements of the first two claims were combined by defendant, its selective signaling being secured by "current changes of one or an-

other character." As to patent '88, however, which, as we have seen, must be confined to much more specific structures, we do not find the testimony sufficient.

The decree of the circuit court is affirmed as to patent '87 and reversed as to patent '88, without costs to either party.